**COLUMBUS EDUCATION ASSOCIATION, on behalf of itself and its members; and Andrew B. Meilton, on behalf of himself and all others similarly situated, Plaintiffs-Appellants,**

v.

**COLUMBUS CITY SCHOOL DISTRICT: Virginia E. Printice, President of the Board of Education; Dr. David D. Hamlar, Margie Castleman, Paul R. Langdon, Thomas J. Moyer, Marilyn Redden and Dr. Watson H. Walker, Members of the Board of Education; John E. Ellis, Superintendent; and C. E. Pollock, Principal, on behalf of himself and all other principals employed by the Columbus City School District; individually and in their official capacities, Defendants-Appellees.**

No. 77–3613.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 30, 1980.

Decided June 30, 1980.

Rehearing and Rehearing En Banc Denied Sept. 15, 1980.

Leonard J. Schwartz, Schwartz & Fishman, Columbus, Ohio, Jerry D. Anker, Wald, Harkrader & Ross, Robert S. Chanin, Washington, D. C., for plaintiffs-appellants.

Lawrence H. Braun, Columbus, Ohio, Russell Leach, Bricker, Evatt, Barton & Eckler, G. Roger King, Columbus, Ohio, for defendants-appellees.

Before MERRITT, MARTIN and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Andrew Meilton, a junior high school teacher in the Columbus City School System, was reprimanded by his supervising principal for engaging in "unprofessional conduct" while acting in his capacity as building representative of the Columbus Education Association. Meilton filed suit in the federal district court alleging that the letter of reprimand placed in his personnel file by his principal was predicated on Meilton's zealous advocacy as a union representative of a fellow teacher's complaint. The district court, after a nonjury trial, entered judgment for defendants, holding that the principal's letter of reprimand was not motivated by a desire to curtail or penalize Meilton's expression of free speech.[1]  Be-

---

1.  The district court decided several procedural issues raised by the defendants. First, it rejected defendant's contention that plaintiffs were barred from bringing this action because they had not exhausted their contractual remedies under the collective bargaining agreement. The district court distinguished contract claims from plaintiffs' First Amendment claims and relied upon *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147

cause we hold that the district court improperly applied to this case the Supreme Court's decision in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), and erred in its failure to apply the test in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), we reverse.

### I.

Plaintiffs are the Columbus Education Association ("CEA"), the recognized collective bargaining representative for teachers in Columbus, Ohio, and Meilton, the CEA building representative at Barrett Junior High School.[2] The named defendants are the Columbus City School District, its Superintendent, each of the members of the Columbus Board of Education, and Charles Pollock, Principal of the Barrett School.

On Friday, February 15, 1974, Judy Davis, the school librarian, disciplined two students for making excessive noise in the school's main office. Davis attempted to quiet the students, touching one of them in the process. Donald Newman, the Vice Principal, observed this interaction and asked Davis to step into his office. Newman criticized Davis' disciplining of the two students. Later that day Davis related these events to Meilton. Meilton, in his capacity as the CEA building representative, requested a meeting with Charles Pollock and Judy Davis to discuss the matter. A meeting was scheduled for the next Monday.

At the Monday morning meeting Meilton, speaking on Davis' behalf and with her consent, explained why Davis was upset and presented her complaints. Before the meeting was formally adjourned, Meilton indicated that he had a class waiting and rose to leave. Davis also left the meeting at that time.

Shortly after the meeting, Pollock circulated a memorandum which announced that an additional meeting would be held that afternoon. At that meeting Pollock indicated his intention to discuss Meilton's conduct. Meilton requested a postponement of the meeting until he could secure CEA representation and left the meeting. Davis stayed. In his deposition, Pollock indicated that he only wished to discuss the "matter" informally. On February 27, 1974, Pollock sent a letter to Meilton stating that Meilton's conduct had been unprofessional and unacceptable.[3] A copy of the letter was

(1974), to hold that use of a grievance procedure does not bar plaintiffs' claim. We affirm. Second, the district court rejected defendants' claims that the court lacked jurisdiction under 28 U.S.C. §§ 1331, 28 U.S.C. § 1343 and 42 U.S.C. § 1983. It found that the letter of reprimand could adversely affect Meilton's opportunity for promotions within the Columbus schools and opportunity for employment elsewhere and thus stated a colorable claim that the amount in controversy was in excess of $10,000. We affirm. See *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 277–79, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

2. Although the parties disagree vigorously about the facts, we hold that the district court's findings of fact are not clearly erroneous.

3. The letter of reprimand reads:

February 27, 1974

Mr. Andrew Meilton
345 Deshler Avenue
Columbus, Ohio
Dear Mr. Meilton:
As the C.E.A. Building Representative, it is most important that you understand your role as well as conduct yourself in a professional manner at all times. The building representative is first and foremost an employee of the Columbus Public Schools and a member of the professional staff under my direction, for whose conduct and performance I am responsible.

Your recent conduct on Monday, February 18, at a conference involving Mrs. Judy Davis, you, Mr. Donald Newman and myself, was unprofessional and unacceptable.

Your ushering Mrs. Davis out of the office saying, "Come on, Judy, I don't want to leave you here with them," is one specific example. Prior to this statement, the issue discussed was solved to what appeared to be the mutual satisfaction of both parties.

The other specific example occurred at the end of the day as I tried to review the progress made earlier in the day and clarify areas of responsibility. As the building principal, it is within my area of responsibility to conduct a conference with any staff member, including the building representative(s) at my request. At this conference, your refusing to listen to what I had to say, your statements —"You can't say anything to me without my

placed in Meilton's personnel file. Plaintiffs seek to have the letter removed from the file.

## II.

The district court held that the defendants had not infringed on plaintiffs' First Amendment rights. It relied heavily on *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), where the Supreme Court in dicta described the rights of public employees in the following manner:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Id.* at 349–50, 96 S.Ct. at 2080 (Footnote omitted.).

The district court found that the letter of reprimand was not *motivated* by a desire to curtail or penalize plaintiffs' free expression of speech, stating:

> having representation . . ." your encouraging Mrs. Davis to leave my office after I had asked her to stay, by saying, "Come on, Judy, you're making a big mistake. Come on, We'll go downtown and get the big guns to fight it" all reflect unprofessional and unacceptable conduct.
>     Respectfully,
>     C. E. Pollock, Principal
>     Barrett Junior High School
> CEP/rb

Andrew Meilton
P.S. A copy of this letter will be placed in your file. You have a right to attach comments consistent with Article 24 Paragraph B

I read this letter to be merely an expression of Pollock's opinion that the manner in which Meilton chose to exercise his freedom of speech was inappropriate and unprofessional under the circumstances, and beyond the scope of his activities under the collective bargaining agreement. Absent a finding of an intent to deprive, or an actual deprivation of, some constitutional right, the expression by a school administrator of his opinion as to the conduct of a teacher employed in that school is a matter within the internal personnel policies of the school, or at most a matter cognizable under state law.

■ The district court's finding that the principal did not intend to violate plaintiffs' constitutional right of free expression is predicated upon its application of the above-quoted dicta from *Bishop*. *Bishop* is inapposite to the issue presented for review. The Supreme Court in *Bishop* analyzed the constitutionality of the dismissal of a municipal employee.[4] Bishop argued that in dismissing him the City of Marion, North Carolina failed to comply with the Fourteenth Amendment's due process requirements of notice and opportunity for hearing as set forth in *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Unlike Bishop, plaintiffs in this case do not argue that the defendants' actions deprived Meilton of a property interest, although they do allege harm to reputation. Plaintiffs' main

of the Current Agreement between the Columbus Board of Education and C.E.A.

4. The Supreme Court affirmed Bishop's dismissal holding: (1) the municipal ordinances of the City of Marion did not create a property interest in which an employee has an "enforceable expectation of continued public employment" 426 U.S. at 345, 96 S.Ct. at 2077; and (2) the dismissal of an employee terminable at will for "failure to follow certain orders, poor attendance at police training classes causing low morale, and conduct unsuited to an officer." 426 U.S. at 343, 96 S.Ct. at 2077, even if untrue, did not implicate a constitutionally protected interest in liberty absent public disclosure of the reasons for the discharge.

claim is that the letter of reprimand has a chilling effect on their exercise of free speech and association. Agreeing with plaintiffs' characterization of the harm, we conclude *Bishop* is inapposite to the issue to be decided. Consequently, we do not defer to findings of the district court which are guided by the application of an improper test.

## III.

■ At issue is whether Pollock's letter of reprimand was written in retaliation for Meilton's zealous advocacy as a designated union spokesperson of a fellow teacher's complaint. *Smith v. Arkansas State Highway Employees, Local 1315,* 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). The Supreme Court in *Mt. Healthy* and in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), established the principles which guide our resolution of this appeal. The Supreme Court in *Mt. Healthy* fashioned a "test of causation which distinguishes between a result caused by a constitutional violation and one not so caused." 429 U.S. at 286, 97 S.Ct. at 575. The court reasoned that "[t]he constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." *Id.* at 285–286, 97 S.Ct. at 576. *Mt. Healthy* sanctioned the application of the following procedure to determine causation:

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

429 U.S. at 287, 97 S.Ct. at 576 (Footnote omitted).

Applying these principles, we hold that Meilton's zealous advocacy as a union spokesperson of a fellow teacher's complaint was a substantial factor in the principles letter of reprimand.

It cannot be gainsaid that the First Amendment protects the rights of individuals to speak freely, to advocate ideas, to associate with others, and the rights of an association to engage in advocacy on behalf of its members. *Smith,* 99 S.Ct. at 1827; *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). Thus, a reprimand to retaliate against the zealous representation by a union spokesperson of a member's grievance impermissibly infringes upon the constitutional right of free association, recognized in *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and *Shelton v. Tucker,* 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), and the right to free speech recognized in *Pickering.*

It is undisputed that the principal's letter reprimanding Meilton for "unprofessional and unacceptable conduct" was written in response to Meilton's representation of a fellow employee. One cannot separate Meilton's zealous advocacy from his role as a union representative. Thus, we find that plaintiff established a prima facie case that the reprimand was predicated on constitutionally protected activity. The burden then shifted to defendants to prove that its interest in the efficient administration of education outweighs the plaintiffs' free speech and association rights. *Pickering v. Board of Education,* 391 U.S. at 568, 88 S.Ct. at 1734.

■ Defendants argue on appeal that the First Amendment does not protect statements made in private on a matter not of general public concern. The Supreme Court held in *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), that the First Amendment does protect an employee's private communications with an employer. In *Givhan,* the employee protested racially discriminatory employment policies.

The Court stated that the *Pickering* balancing test may involve different considerations for private statements:

> When a teacher speaks publicly, it is generally the *content* of his statements that must be assessed to determine whether they "in any way either impeded the teacher's proper performance of his daily duties in the classroom or . . . interfered with the regular operation of the schools generally." (citation omitted). Private expression, however, may in some situations bring additional factors to the *Pickering* calculus. When a government employee personally confronts his immediate superior, the employing agency's institutional efficiency may be threatened not only by the content of the employee's message but also by the manner, time, and place in which it is delivered.

*Id.* at 415, n. 4, 99 S.Ct. at 696.

Relevant factors justifying a state's regulation of its employees' speech include the content of the speech, coworker harmony, maintaining discipline by immediate supervisors, need for personal loyalty and confidence between workers and supervisors, *Pickering v. Board of Education*, 391 U.S. at 569–70, 88 S.Ct. at 1735–1736; and the time, place and manner in which the speech is delivered, *Givhan v. Western Line Consolidated School District*, 439 U.S. at 415, n. 4, 99 S.Ct. at 696. Defendants offered no evidence justifying its regulation of its employees' exercise of free speech. Based upon our review of the record and oral arguments on appeal, we conclude defendants have failed to offer any rationale to legitimize the reprimand.

Plaintiff was not disruptive of school operations. *Tinker v. Des Moines Ind. School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). There is no factfinding of disruptive effect. The conversations were in private and involved the disciplining of students by one of the teachers whom Meilton represented as a zealous advocate. We fail to see any significant or material disruptive effect. *See Barnasconi v. Tempe Elementary School District No. 3*, 548 F.2d 857 (9th Cir. 1977).

Nor did Meilton engage in any egregious misconduct that would take his speech outside the limits of protected activity. Meilton's conduct did not involve direct public criticism of his supervisor or did not arouse intense animosity among his coworkers. *E. g., Sprague v. Fitzpatrick*, 546 F.2d 560 (3rd Cir. 1976); *Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222 (1st Cir. 1976).

Meilton's representation of a fellow teacher's complaint followed established procedures and occurred at the time, place and in the manner agreed to by the parties. *Givhan v. Western Line Consolidated School District*, 439 U.S. at 415, n. 4, 99 S.Ct. at 696. Had Meilton either unilaterally decided to represent a fellow teacher or caused harm to the operation of the school, the State's reprimand would have more legitimacy and the plaintiff's claim to constitutionally protected speech and association would be less compelling.

■ A union representative must be allowed to be a zealous advocate. The defendant has failed to demonstrate any substantive interest in the forms of evils flowing from plaintiff's activities which can justify the reprimand it has imposed. *Brotherhood of Railroad Trainmen v. Virginia ex rel. Virginia State Bar*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964). As stated by this Circuit, "[t]o allow any rancorous feelings engendered in this manner to justify a [reprimand] would decimate constitutional protections." *Hickman v. Valley Local School District*, 619 F.2d 606 at 609 (6th Cir., 1980).

Accordingly, the judgment of the district court is reversed and the case is remanded to the district court. Upon remand the district court shall order the defendant to expunge the reprimand from Meilton's personnel files, and shall consider the appropriateness of an award of attorneys fees, and, if appropriate, the amount of such an award.

MERRITT, Circuit Judge, dissenting.

I agree with the District Judge that the principal's letter to the teacher was nothing

more than an expression of opinion that the teacher's conduct toward the principal was rude and therefore "unprofessional." In my view the principal has as much right as the teacher under the First Amendment to object to the other's conduct. The record does not indicate that the teacher suffered any adverse consequences whatever from the principal's letter or its retention in the teacher's file. The principal did not exclude the teacher's speech from the school. He did not silence the teacher. He simply objected to it and added his own critical voice to the exchange. See Tribe, American Constitutional Law §§ 12–4, 12–21 (1978).