906 F.2d 1434
 134 L.R.R.M. (BNA) 2595, 61 Ed. Law Rep. 470
 Isabel MORFIN; Michael Kotlisky, Plaintiff-Appellants,
v.
ALBUQUERQUE PUBLIC SCHOOLS; Marilyn Davenport, Individually
and as an agent for Albuquerque Public Schools; John
Mondragon, Individually and as agent for Albuquerque Public
Schools; Karen Hill, Individually and as an agent for
Albuquerque Public Schools, Defendant-Appellees.
 No. 89-2140.
 United States Court of Appeals,
Tenth Circuit.
 June 27, 1990.
 
 Eric Isbell-Sirotkin (Aaron Bartels, with him on the brief), of Girard Street Legal Clinic, Albuquerque, N.M., for plaintiff-appellants.
 Gregory D. Huffaker, Jr. (David E. Brown, with him on the brief), of the Poole Law Firm, Albuquerque, N.M., for defendants-appellees.
 Before ANDERSON and EBEL, Circuit Judges, and BROWN,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Plaintiff-appellants Isabel Morfin and Michael Kotlisky appeal a summary judgment granted in favor of defendant-appellees Marilyn Davenport and John Mondragon.[1] The plaintiffs claim that the defendants retaliated against them for engaging in constitutionally protected conduct. The district court held that some of the conduct was not protected, and that it was not clearly established at the time that the remainder was protected (and therefore, the defendants acted within their qualified immunity).
 
 BACKGROUND
 
 2
 When we review a summary judgment, we resolve all factual disputes, and draw all inferences, in favor of the party against whom judgment was granted. Reazin v. Blue Cross & Blue Shield, 899 F.2d 951, 979 (10th Cir.1990). Viewed in this light, the relevant[2] facts are as follows:
 
 
 3
 During the 1985-86 academic year, Kotlisky and Morfin, who are married to each other, were employed at the Sandia Base Elementary School ("Sandia"), which is part of the Albuquerque Public Schools ("APS"). Davenport was the principal of Sandia; Mondragon was her supervisor. The exclusive bargaining agent for APS staff was the American Federation of Teachers ("AFT").
 
 
 4
 The previous principal of Sandia had been reassigned, in part because of parental complaints about discipline. Mondragon deposition at 9. Further community interest in school discipline was created when the superintendent of APS announced that the district would adopt a new disciplinary theory. Davenport deposition at 38.
 
 
 5
 At the beginning of the year, Davenport described to the staff her philosophy of discipline. Kolitsky deposition at 174. Kolitsky and Morfin held a different view, Kotlisky deposition at 141, 180; Morfin deposition at 94, and complained to Sandia personnel, APS administrators, and Davenport herself that she had not set out sufficiently clear consequences for misbehavior, Benavidez deposition at 13; Lewis deposition at 28; Morfin deposition at 95-96; Kotlisky deposition at 187, 205-06.
 
 
 6
 In November, Kotlisky missed a staff meeting because some children needed supervision. Kotlisky deposition at 403. Davenport was informed of his whereabouts. Id. at 411. She later denied knowing where he was, and she also falsely denied knowing that Kotlisky was a member of a counselors' advisory board, and periodically had to leave school to attend board meetings. Id. at 318, 420, 429. Davenport then required Kotlisky to leave her a note every time he left the school grounds. Id. at 425. No one else had to do this. Id. at 429. Kotlisky filed a grievance with the AFT. Id. at 427.
 
 
 7
 Kotlisky filed another grievance in December, with both the AFT and the National Education Association ("NEA"), another teachers' union, concerning the fact that Davenport was improperly asking teachers to evaluate staff members. Id. at 319.
 
 
 8
 In January, after Kotlisky complained to Mondragon that Davenport could not fairly evaluate him, the three of them met. Mondragon insulted Kotlisky and told him he had no right to file a grievance against Davenport or to question her disciplinary policy. Id. at 477-96. Dissatisfied with the unions' inability to ease the situation, Kotlisky and Morfin met with APS' employee relations supervisor. Id. at 506.
 
 
 9
 Davenport called Morfin to a meeting to discuss allegedly insubordinate and unprofessional behavior on Morfin's part. Davenport affidavit at 13. Morfin conferred with an NEA representative. Morfin deposition at 249.
 
 DISCUSSION
 I.
 
 10
 The plaintiffs contend that in retaliation for constitutionally protected conduct, they were subjected to substantial harassment and abuse,[3] Kotlisky was transferred to another school, and Morfin's contract was not renewed.[4] The defendants are entitled to summary judgment if the plaintiffs did not produce evidence sufficient to create a genuine issue of material fact regarding whether the defendants committed the acts of which the plaintiffs complain. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); see Celotex v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because there is no evidence that Mondragon had anything to do with Morfin, he is entitled to summary judgment as to all of her claims. Genuine issues of fact do exist regarding Morfin's claims against Davenport and Kotlisky's claims against both defendants.
 
 II.
 
 11
 Kotlisky and Morfin claim that they were punished for criticizing Davenport's disciplinary policy. Public employees may not be retaliated against for "speech on a matter of public concern," i.e., "political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146-48, 103 S.Ct. 1684, 1689-90, 75 L.Ed.2d 708 (1983). To make this determination, we consider the content, form, and context of the speech. Id. at 147-48, 103 S.Ct. at 1690.
 
 
 12
 Generally, speech by a public school employee about a policy or practice which can substantially and detrimentally affect the welfare of the children attending the school constitutes speech on a matter of public concern. See Johnsen v. Independent School Dist. No. 3, 891 F.2d 1485, 1490 (10th Cir.1989); Rankin v. Independent School Dist. No. I-3, 876 F.2d 838, 843 (10th Cir.1989); Leuthje v. Peavine School Dist., 872 F.2d 352, 355 (10th Cir.1989); cf. Saye v. St. Vrain Valley School Dist. RE-1J, 785 F.2d 862, 866 (10th Cir.1986) ("The allocation of aide time among teachers is not a matter inherently of public concern."). On the record before us, this is such a case.
 
 
 13
 Public officials are protected by qualified immunity. They are immune unless their conduct violates rights which were " 'clearly established' at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). At the time the actions challenged herein were taken, it was not clear that our decision in Schmidt v. Fremont County School Dist. No. 25, 558 F.2d 982 (10th Cir.1977), had not "establish[ed] a per se rule exempting statements made in the course of official duties from the protection of the First Amendment," Koch v. City of Hutchinson, 847 F.2d 1436, 1442 (10th Cir.), cert. denied, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988).
 
 
 14
 "In Schmidt, this court affirmed a district court decision that statements by a high school principal to the board of education concerning the school's career education program and football reserved ticket sales policy were 'not on issues of general public concern but statements at the school on the internal affairs of the school system.' This court went on to say, '[the statements] were part of his official functions. These statements do not invoke First Amendment protection.' "
 
 
 15
 Id. (quoting Schmidt v. Fremont County School Dist. No. 25, 558 F.2d at 984-85). That Schmidt did not establish such a rule was not clearly established until 1988. See Koch v. City of Hutchinson, 847 F.2d at 1442; see also Koch v. City of Hutchinson, 814 F.2d 1489, 1500-01 (10th Cir.1987) (Seth, J., dissenting) (citing Schmidt for the proposition that a report prepared in the course of an employee's official duties was not speech on a matter of public concern), on reh'g en banc, 847 F.2d 1436 (10th Cir.), cert. denied, 488 U.S. 909, 109 S.Ct. 262, 102 L.Ed.2d 250 (1988); Marcum v. Dahl, 658 F.2d 731, 734 (10th Cir.1981) (citing Schmidt for the proposition that complaints about who should coach the school's women's basketball team "were internal problems with which defendants were required to deal in their official capacities. Such matters are not of general public concern."). Therefore, the defendants are qualifiedly immune on the plaintiffs' free speech claims.
 
 III.
 
 16
 The First Amendment protects the right of a public employee to join and participate in a labor union. Smith v. Arkansas State Highway Employees, 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979); Saye v. St. Vrain Valley School Dist. RE-1J, 785 F.2d at 867; Childers v. Independent School Dist. No. 1, 676 F.2d 1338, 1342 (10th Cir.1982); Key v. Rutherford, 645 F.2d 880, 885 (10th Cir.1981). Kotlisky contends that he was retaliated against for filing grievances with the AFT. Both plaintiffs contend that they were retaliated against for associating with the NEA.
 
 
 17
 The right to join and participate in a labor union prohibits retaliation against an employee who files a grievance with the union. Stellmaker v. DePetrillo, 710 F.Supp. 891, 892 (D.Conn.1989); Gavrilles v. O'Connor, 579 F.Supp. 301, 304 (D.Mass.1984); see Wren v. Spurlock, 798 F.2d 1313, 1316-17 (10th Cir.1986); Professional Ass'n of College Educators v. El Paso County Community College Dist., 730 F.2d 258, 263 & n. 7 (5th Cir.), cert. denied, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984); Carter v. Kurzejeski, 706 F.2d 835, 837-38 (8th Cir.1983); Columbus Educ. Ass'n v. Columbus City School Dist., 623 F.2d 1155, 1159 (6th Cir.1980); Healy v. Town of Pembroke Park, 643 F.Supp. 1208, 1212 (S.D.Fla.1986), modified on other grounds, 831 F.2d 989 (11th Cir.1987).
 
 
 18
 The defendants contend that the unconstitutionality of retaliating against a grieving employee was not clearly established. We disagree. The unconstitutionality of retaliating against an employee for participating in a union was clearly established, and that right would be "meaningless" if an employee could be punished for filing a grievance. Carter v. Kurzejeski, 706 F.2d at 838. The "contours of the right," Anderson v. Creighton, 483 U.S. at 640, 107 S.Ct. at 3039, to engage in union activities free of retaliation clearly included filing a grievance. Gavrilles v. O'Connor, 611 F.Supp. 210, 211 (D.Mass.1985) ("The impermissibility of retaliating against an employee for engaging in union activities was clearly established by 1982. Insofar as the filing and processing of grievances is a legitimate union pursuit, I rule that defendants reasonably should have known that retaliation for participating in that activity is constitutionally prohibited.").
 
 
 19
 A public employee's First Amendment rights also include "the right ... to associate with the union of [his or her] choice," even one other than the exclusive bargaining agent. Missouri Nat'l Educ. Ass'n v. New Madrid County R-1 Enlarged School Dist., 810 F.2d 164, 166-67 (8th Cir.1987); see Brown v. Alexander, 718 F.2d 1417, 1429 (6th Cir.1983); Alabama State Fed'n of Teachers v. James, 656 F.2d 193, 197 (5th Cir. Unit B Sept.1981); Greminger v. Seaborne, 584 F.2d 275, 277-78 (8th Cir.1978); Connecticut State Fed'n of Teachers v. Board of Educ. Members, 538 F.2d 471, 478 (2d Cir.1976); cf. Hanover Township Fed'n of Teachers Local 1954 v. Hanover Community School Corp., 457 F.2d 456, 460 (7th Cir.1972) ("there is no reason to distinguish a union from any other association").
 
 
 20
 The right to associate with a union other than the exclusive bargaining agent also follows from the right to participate in union activities, though perhaps not as ineluctably as the right to file a grievance. In the absence of contemporary Tenth Circuit precedent directly concerning the issue, we may look to the law of other circuits when deciding whether or not a right was clearly established. See Garcia by Garcia v. Miera, 817 F.2d 650, 657-58 (10th Cir.1987), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). We hold that the plaintiffs' right to associate with the NEA was clearly established during the period in question. Consequently, the defendants were not qualifiedly immune.
 
 IV.
 
 21
 Morfin claims that she was retaliated against for her association with Kotlisky.
 
 
 22
 First, relying upon our decision in Owens v. Rush, 654 F.2d 1370 (10th Cir.1981), she argues that she exercised a First Amendment right to associate with Kotlisky in support of his First Amendment activities when she accompanied him when he met, at different times, with an AFT representative and with APS's employee relations supervisor. Owens v. Rush involved a couple who both were employed by the county sheriff's department. The husband was fired after he accompanied his wife to her attorney's office and assisted her in the preparation of a Title VII complaint against the department. Id. at 1378-79. Leaving aside the question of whether or not the decision applies solely to associating with another in the preparation of litigation, we hold that Morfin's claim fails because she has not asserted that she actually assisted Kotlisky's pursuit of his complaints. Merely showing one's support is not sufficient. Copp v. Unified School Dist. No. 501, 882 F.2d 1547, 1550-51 (10th Cir.1989).
 
 
 23
 Second, Morfin contends that Davenport acted against her because of the acrimony between Davenport and Kotlisky. The marital relationship is protected from unreasonable governmental interference. Roberts v. United States Jaycees, 468 U.S. 609, 619, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984); see Zablocki v. Redhail, 434 U.S. 374, 383-36, 98 S.Ct. 673, 679-81, 54 L.Ed.2d 618 (1978); Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967). Actions taken by a public official against a public employee because of animosity for the employee's spouse can in certain circumstances, cf. note 3, supra, unconstitutionally burden the marriage relationship. Newborn v. Morrison, 440 F.Supp. 623, 626-27 (S.D.Ill.1977); cf. Littlejohn v. Rose, 768 F.2d 765, 768-69 (6th Cir.1985), cert. denied, 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986); Hughes v. Lipscher, 720 F.Supp. 454, 459-61 (D.N.J.1989); Hall v. Board of Educ., 639 F.Supp. 501, 512 (N.D.Ill.1986). See generally Hameetman v. City of Chicago, 776 F.2d 636, 642-43 (7th Cir.1985).
 
 
 24
 A defendant can be held liable for violating a right of intimate association only if the plaintiff shows an intent to interfere with the relationship. Trujillo v. Board of County Comm'rs, 768 F.2d 1186, 1190 (10th Cir.1985). Davenport argues that Morfin failed to establish a genuine issue of material fact as to whether this association had any effect upon Davenport's actions.
 
 
 25
 As we noted earlier, note 2, supra, there exist factual disputes regarding the defendants' motivation. This is no exception. Specifically, there was uncontradicted evidence that, following his transfer, Kotlisky was warned by several administrators that Morfin would be unprotected from Davenport's "vindictive[ness]" unless she also transferred. Kotlisky deposition at 14. This evidence creates a genuine issue of material fact as to whether Davenport acted adversely to Morfin because of Morfin's association with Kotlisky. Cf. Hall v. Board of Educ., 639 F.Supp. at 508-09. Summary judgment was not appropriate.
 
 CONCLUSION
 
 26
 Mondragon was entitled to summary judgment on all of Morfin's claims. Both defendants were entitled to summary judgment on the plaintiffs' free speech claims. Neither defendant was entitled to summary judgment on Kotlisky's union association claims. Davenport was not entitled to summary judgment on Morfin's union association claim. She was entitled to summary judgment on Kotlisky's Fourth Amendment claim and Morfin's First Amendment association claim, but not on Morfin's marital association claim.
 
 
 27
 The judgment of the district court is AFFIRMED in part and REMANDED in part for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Wesley E. Brown, United States Senior District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Karen Hill and the Albuquerque Public Schools also are named as appellees. However, the plaintiffs have not appealed the grounds upon which the district court ruled in these defendants' favor. This appeal concerns only Davenport and Mondragon
 
 
 [2]
 There are material factual disputes regarding the defendants' motivation which prevent summary judgment on the grounds that the plaintiffs' allegedly protected conduct was not a substantial factor in the challenged employment decisions or that the same actions would have been taken anyway. See, e.g., Wulf v. City of Wichita, 883 F.2d 842, 856-57 (10th Cir.1989). The evidence also is inconclusive on the question of whether the plaintiffs' rights, if any, were outweighed by the State's interest in efficient public services. See id. at 856
 Therefore, summary judgment was proper only if the plaintiffs' conduct was not constitutionally protected (or it was not clearly established that the conduct was constitutionally protected). Facts not relating to these questions have been omitted.
 
 
 [3]
 We reject the defendants' apparent position, see Brief of Appellees at 15-17, that only adverse employment decisions, such as termination, suspension, or transfer, in retaliation for constitutionally protected conduct are illegal. Actions short of an actual or constructive employment decision can in certain circumstances violate the First Amendment. Agosto-de-Feliciano v. Aponte-Rocque, 889 F.2d 1209, 1214-18 (1st Cir.1989); Messer v. Curci, 881 F.2d 219, 224 (6th Cir.1989); Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir.1989); Lieberman v. Reisman, 857 F.2d 896, 900 (2d Cir.1988); Bennis v. Gable, 823 F.2d 723, 731 & n. 9 (3d Cir.1987); Allen v. Scribner, 812 F.2d 426, 434 & n. 16 (9th Cir.), modified on other grounds, 828 F.2d 1445 (9th Cir.1987). But see Delong v. United States, 621 F.2d 618, 623-24 (4th Cir.1980). The delineation of a precise standard shall await another day
 
 
 [4]
 Kotlisky also claimed that his Fourth Amendment rights were violated by security personnel acting at Davenport's behest. However, the portions of the record cited in the plaintiffs' brief do not discuss such an incident, and nowhere else in the record before us is there any evidence of an unreasonable search or seizure. The summary judgment on this claim must therefore be affirmed. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Apparently, the plaintiffs have failed to fulfill their duty to ensure that the record on appeal contains evidence supporting each of their claims. See Fed.R.App.P. 10(b)(2), 11(a)